UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CASE NO. 3:23-CR-65-DJH

*(Filed Electronically)*

UNITED STATES OF AMERICA                                                  PLAINTIFF

v.              **<u>SENTENCING MEMORANDUM FOR KELVIN ANDERSON</u>**

KELVIN L. ANDERSON                                                        DEFENDANT

***** ***** *****

Comes the Defendant, Kelvin Anderson, by and through his counsel, Attorney Ashlea N. Hellmann and hereby files with this Honorable Court, the following Sentencing Memorandum, setting forth the pertinent factors which the Defendant believes this Court should consider in determining what length of sentence is "sufficient, but not greater than necessary," to satisfy the United States Sentencing Commission's goals of federal sentencing.

## FACTUAL BACKGROUND

Defendant Kelvin Anderson (hereinafter "Mr. Anderson") was arrested on May 9, 2023 in the Western District of Kentucky and charged by Indictment on June 6, 2023.  On September 11, 2023, in the same Court, Mr. Anderson plead guilty to Count One (1) of the Indictment, which states that:

> … on or about May 9, 2023, in the Western District of Kentucky, Jefferson County, Kentucky, the defendant knowingly and intentionally possessed with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, as defined in Title 21 U.S.C. §812, in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(B).

The Plea Agreement was consensually signed by Mr. Anderson and the Court accepted his plea of guilt. After accepting the guilty plea, the Court set a sentencing date for January 3, 2024.

**APPLICABLE LAW**

The Sentencing Reform Act of 1984 was enacted by Congress in response to widespread sentencing disparity that existed in the federal sentencing system. Title II, Comprehensive Crime Control Act of 1984, Pub. L. No. 98–473, 98 Stat. 1837 (1984). Congress' goal was to provide federal sentencing judges with the "flexibility to consider which of the core sentencing principles – retribution, deterrence, incapacitation, and rehabilitation – are the most important in a particular case, and to provide alternatives to incarceration where necessary in carrying out statutory goals." United States v. K, 160 F.Supp.29 421 (2001) citing 18 U.S.C. §3553(a)(3).

However, availing the judiciary with such discretion quickly led to the perception that federal judges were handing out, "an unjustifiably wide range of sentences to offenders with similar histories, convicted of similar crimes, committed under similar circumstances." S.Rep. No. 98-225, p. 38 (1983). In attempts to provide structure to this previously unfettered discretion, the United States Sentencing Commission ("U.S.S.C.") was formed in order to develop a set of guidelines which would, "specify an appropriate [sentencing range] for each class of convicted persons." Guidelines Manual, U.S.S.C, ch.1, pt.A, p.1 (Nov.1995) (1995 U.S.S.G.). These Guideline ranges, enacted on November 1, 1987, created a mandatory sentencing guideline system which required federal judges to impose sentences within the applicable guideline range, unless the court found the existence of an aggravating or mitigating circumstance not adequately taken into consideration by the Commission in formulating the sentencing guidelines. 18 U.S.C. §3553(b)(1); *excised by* United States v. Booker, 543 U.S. 220 (2005).

In 2005 though this mandatory system came to a halt when the Supreme Court in Booker, determined that a mandatory application of the Federal Sentencing Guidelines violated the right to trial by jury under the Sixth Amendment. 524 U.S. 956 (2004). The Court remedied this Sixth

Amendment violation by excising the provisions in the Sentencing Reform Act that made the federal sentencing guidelines mandatory, thereby converting the mandatory system into an advisory one. Id.

The Court followed Booker closely after in Gall v. United States, further elaborating that sentencing courts must now follow the three-step process in sentencing a defendant. 552 U.S. 38 (2007). First, the court must properly determine the Guideline range. Id.; 18 U.S.C. § 3553(a)(4). Next, the court must then determine whether to apply any of the guidelines' departure policy statements to adjust the guideline range. Id.; 18 U.S.C. § 3553(a)(5). Lastly, the court must consider all the factors set forth in 18 U.S.C. § 3553(a) as a whole, including whether a variance is warranted. §1B1.1(c); see also United States v. Stone, 432 F.3d 651, 655 (6th Cir. 2005).

## ARGUMENT

Based on the Court's duties and abilities promulgated to it under the Act, the Guidelines, and relevant caselaw, the task of imposing an appropriate sentence in this case may be correctly accomplished by first determining the applicable Sentencing Guideline range for Mr. Anderson. Next the Court must determine whether to apply any of the Guidelines' departure policy statements to adjust this guideline range. Lastly, the Court must then decide whether any of the factors listed in 18 U.S.C. § 3553(a) warrant the imposition of a "variance" that could result in a nonguideline sentence. See Booker, 543 at 264-65; USSG § 1B1.1, comment.

## I. THE APPLICABLE SENTENCING GUIDELINE RANGE FOR MR. ANDERSON

United States Probation Officer Shannon Teague (hereinafter "Officer Teague"), of the United States Office of Probation and Parole has determined in her Presentence Investigation Report ("PSI") filed November 28, 2023, that pursuant to all relevant information, Mr. Anderson scores a "Total Offense Level" of 29. She also concluded that his "Criminal History" score was

one (1) and Category I, making his **Guideline range eighty-seven (87) to one hundred eight (108) months**. Mr. Anderson does not contest this calculation.

The Sixth Circuit and the Supreme Court in <u>Rita v. United States</u> have held that a sentence within the properly calculated guideline range is presumptively reasonable. 551 U.S. 338 (2007). Thus, it would not be improper or unordinary for this Court to impose on Mr. Anderson a sentence that falls within this Guideline range. However, as the Court in <u>Booker</u> has required, before doing so, this Court must also first give due consideration to the any available departures and the factors of 18 U.S.C. § 3553(a) before imposing a sentence. Therefore, the court may not presume that a Guidelines sentence is reasonable until there is at least full consideration of these individualized facts regarding the defendant and his or her circumstances. Mr. Anderson will argue below that these factors, when evaluated within his case, merit a nonguideline sentence below the range proscribed for him by the Guidelines.

## II. WHETHER TO APPLY ANY OF THE GUIDELINES' DEPARTURE POLICY STATEMENTS TO ADJUST THE GUIDLINE RANGE

As Congress acknowledged in the Sentencing Reform Act, and explicitly stated in The Guidelines Manual itself, "it is difficult to prescribe a single set of guidelines that encompasses the broad range of human conduct potentially relevant to a sentencing decision." USSG, Ch. 1 Pt. A(1)(4)(b); §5K2.0 comment. (backg'd); 18 U.S.C. § 3553(b). Departures, therefore, perform an integral function in the sentencing guideline system and help provide courts with a way to impose an appropriate sentence in exceptional circumstances. However, The Guidelines Manual cautions they should apply only in the "atypical" case lying outside the "heartland" of conduct covered by the guidelines. <u>Id</u>. at Ch. 1 Pt. A(1)(4)(b). Based on the above, Mr. Anderson would forgo any requests for a downward departure and instead ask the Court to continue with the rest of the required sentencing analysis.

4

### III.    THE FACTORS LISTED IN 18 U.S.C. § 3553(a) WARRANT THE IMPOSITION OF A DOWNWARD VARIANCE

While a court is required to give "respectful consideration" to the sentence recommended by the Guidelines, judges are ultimately permitted to tailor sentences in light of other statutory concerns as well. *See* Peugh v. U.S., 133 S. Ct. 2072 (2013). The Court in Kimbrough v. United States emphasized that "[t]he district judge... must make an individualized assessment based on the facts presented," 128 S. Ct. 558 (2007). When evaluating these factors the Court determined that "[t]he weight to be accorded to any given §3553(a) factor is a matter committed to the sound discretion of the district court." United States v. Clay, 483 F.3d 739, 743 (11th Cir.2007). The Court has also emphasized that sentencing judges do not need extraordinary reasons to impose a sentence on a defendant that is outside the Guidelines' range. Gall, 128 S. Ct. 586 (2007).

The concept of variances has become a regular practice among Federal Courts, who have found reasons in many cases to grant such variances. This is supported by data compiled by the U.S.S.C in the Judiciary Sentencing Information ("JSIN"), which was developed, at the request of judges, to assist in sentencing. According to the JSIN, in the last five (5) fiscal years (2018-2022) of the 576 defendants with the same Guideline scores and range as Mr. Anderson, the average length of imprisonment imposed was 72 month(s) and the median length of imprisonment imposed was 71 month(s) and 44% of defendants received a downward departure or variance. https://jsin.ussc.gov/analytics/-saw.dll?Dashboard. Last accessed December 26, 2023. This indicates that, on average, most judges are imposing below Guideline range sentences for defendants similar to Mr. Anderson. Thus, Mr. Anderson prays this Court take into consideration his circumstances, as they relate to the factors listed in 18 U.S.C. § 3553(a) and grant him one or more variances from his Guideline sentence. Namely he requests that this Court consider the following:

5

### a. **18 U.S.C. §3553(a)(1): THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

### i. **HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

Mr. Anderson is a fifty-seven (57) year old man who had a fairly typical childhood and life as a young adult. A child of divorce, he and his brother Kenneth floated between their mother and father's home until they were old enough to live on their own. As a young adult Mr. Anderson fathered four (4) children, and now has four (4) grandchildren as well. He prides himself on still being incredibly close with his family. His brother is his best friend, he sees his children and grandchildren regularly, and he plays a prominent role in caring for his aging mother. Prior to his incarceration, Mr. Anderson was frequently the person taking his mother to her doctors' visits, helping her with errands, and maintaining her home, despite his own physical ailments.

Now, as a man past his youth, Mr. Anderson has found himself facing new hurdles in his life. A car accident in 2009 left Mr. Anderson unable to work and dependent on his disability checks to survive. He also found himself facing various significant health issues including type I diabetes, diabetic peripheral neuropathy, neck/back issues, and chronic obstructive pulmonary disease. These health problems have been exacerbated by inadequate medical care for Mr. Anderson while incarcerated. Per his treating doctors, he is supposed to take three (3) shots of insulin daily to manage his diabetes but is only being administered one (1) shot daily since his incarceration. He is also prescribed Gabapentin by his doctor to treat his neuropathy but has been denied this medication completely since his incarceration in May. Despite having screws and plates in his neck, Mr. Anderson has also been required to sleep in a makeshift bed on the floor due to inmate overcrowding. This overall lack of medical treatment has caused Mr. Anderson significant pain and stress as he repeatedly watches his sugar levels read in the 300-400 range,

which are normally in the 80-100 range. He fears that this poor management of his health conditions may result in further injury, limb amputation, or death.

Mr. Anderson's history and characteristics should signify to the Court a Defendant who should be given a sentence reduction below the recommended guideline sentence.

### ii.   NATURE AND CIRCUMSTANCES OF THE OFFENSE

In addition to "the history and characteristics of the defendant," the Court must also consider "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). "The Offense Conduct" on page four (4) of the PSI details the facts of Mr. Anderson's case. There are some notable pieces of information within these facts that Mr. Anderson would ask the Court to take notice of, which support his position that he is deserving of a lower sentence.

First, the Drug Enforcement Administration ("DEA") began investigating Mr. Anderson on January 4, 2023. It was not until March, after conducting controlled buys, that the DEA had any real evidence of Mr. Anderson being involved in the trafficking of narcotics. During these two controlled buys, the DEA obtained 437.6 grams of methamphetamine and 406.7 grams of methamphetamine respectively. At that point, the DEA then had sufficient probable cause for a search warrant/arrest of Mr. Anderson. Also in March, law enforcement seized approximately 477 grams of methamphetamine during a traffic stop on an individual that had exited Mr. Anderson's residence. This means that, by March 2023, the DEA had obtained an approximate total of 1,321.3 grams or 1.321 kilograms of methamphetamine in March that they attributed to Mr. Anderson. If they had chosen to effect an arrest at this point, Mr. Anderson would only be accountable for half the weight of drugs listed on the PSI, placing him at a lower base offense level.

Next, during the month of April, DEA agents de-briefed their confidential informant and were advised that an individual had attempted to sell five (5) pounds of methamphetamine to Mr.

Anderson on April 6, but Mr. Andrson did not purchase the narcotics. The fact that Mr. Anderson did not complete this transaction supports his position that he did not regularly traffic large amounts of narcotics, but rather took a few opportunities to act as a middleman in order to supplement his fixed disability income.

Finally, agents executed a search warrant for Mr. Anderson's residence on May 9, 2023. During this search, there were several people at the residence, including the above-referenced individual, as well as 1,899 grams of methamphetamine, but no guns or cash were found in the residence or on Mr. Anderson. Mr. Anderson would argue that the only reason he had that much methamphetamine though was because that was the amount requested by the female who asked him to obtain it, the same female he believes to be the confidential informant in this case.

Mr. Anderson would argue that, when examining the nature and circumstances of the offense, that this Court should pay attention in particular to how these circumstances arose. Mr. Anderson would assert that the amount that he has admitted to having is not reflective of his culpability or blameworthiness as it was the Government who drove up this amount. The Eighth Circuit in United States v. Barth stated that, "the sentencing guidelines are causing courts nationwide to rethink the long-established rule of entrapment." 990 F.2d 422, 424 (8th Cir. 1993). See U.S. v. Staufer, 38 F.3d 1103, 1106-7 (9th Cir. 1994) (Now that our sentencing scheme has moved from a discretionary process to a determinate system based on the weight of the drugs involved in a transaction, the entrapment doctrine designed for the previous system no longer adequately protects against government abuse nor ensures that defendants will be sentenced on the basis of the extent of their culpability.).

Some courts have found that there may exist a "sentencing entrapment" claim when the government ratchets up a defendant's drug sales or other conduct merely to increase his sentence.

United States v. Stuart, 923 F.2d 607, 614 (8th Cir.); United States v. Lenfesty, 923 F.2d 1293, 1300 (8th Cir.). *See also* Barth, 788 F. Supp. 1055 (D.Minn. 1992). Sentencing entrapment or factor manipulation occurs where "a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment." United States v. Staufer, 38 F.3d 1103, 1106 (9th Cir. 1994) (quoting United States v. Stuart, 923 F.2d607, 614 (8th Cir. 1991)); *See also* United States v. Calva, 979 F.2d 119, 123 (8th Cir. 1992) (recognizing that "the Sentencing Guidelines' mechanism of boosting sentence based on the cumulation of additional drug sales has the potential for abuse by police"). This position also appears to have support from the Sentencing Commission as well who, in November 1993, amended Guideline 2D1.1 under Amend. Application Note to § 2D1.1, which, though referred to "reverse sting operations", expressly recognized that law enforcement agents should not be allowed to structure sting operations in such a way as to maximize the sentences imposed on defendants, and that courts may take into consideration the predisposition and capacity of the defendant to engage in a deal of the magnitude for which he or she was convicted. Staufer, 38 F.3d at 1107.

Mr. Anderson has never engaged in a drug deal remotely approaching the magnitude of the transaction for which he is now convicted. In fact, he only has one prior conviction for selling narcotics, a 2018 conviction for trafficking in heroin, less than 2 grams. That is far less than the amounts of the two (2) controlled buys that agents created. It is astronomically lower than the final amount that agents, through their information, requested Mr. Anderson to procure. Further, the confidential informant confirmed that Mr. Anderson declined to buy a large amount of methamphetamine in April, indicating that buying larger amounts is not something Mr. Anderson regularly does, or would have done, but for being asked by the confidential informant to do so. Further, this additional timeframe taken by the agents was unnecessary to meet any other

reasonable goals of the government. There has been no evidence produced to support any notion that the government in that time was able to locate considerable forfeitable assets or Mr. Anderson's supplier, nor were they able to identify and arrest any coconspirators. *See* <u>Calva</u>, 979 F.2d at 123. Here it should be clear that, although Mr. Anderson might have been predisposed to supply drugs, he was not predisposed to involve himself in what, from the standpoint of the Sentencing Guidelines, is an immense amount of drugs.

**b.  <u>18 U.S.C. §3553(a)(2)A): THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE</u>**

### i.  REFLECT THE SERIOUSNESS OF THE OFFENSE

The language of this section of the Court's examination embodies a cardinal principle of the criminal punishment infrastructure: the proportionality between the offense seriousness and the sentence imposed. In grading the seriousness of the offenses, the criminal law customarily considers two general factors: the harm caused by the offense and the individual's blameworthiness. Joshua Dressler, Understanding Criminal Law, p112-113, 140 (7th Ed. 2015). Imposing lengthier sentences to achieve objectives such as retribution, denunciation, or specific or general deterrence are generally thought to be permissible only with respect to conduct for which the defendant is blameworthy. The primary factor in ranking individual blameworthiness is a defendant's state of mind. *See* <u>Singh</u>, 877 F.3d at 120 ("[A] defendant's motivation for engaging in criminal conduct is unquestionably a proper consideration at sentencing.").

Here, Mr. Anderson's conduct did not cause harm to any identifiable victim, as reflected in his PSR. As to his blameworthiness, Mr. Anderson also urges the Court to consider his state of mind in committing this offense. Mr. Anderson was not motivated to traffic narcotics in order to obtain astronomical wealth, he did so in order to make ends meet and to survive.

ii. PROMOTE RESPECT FOR THE LAW AND TO PROVIDE JUST
PUNISHMENT

The laws punishing criminal conduct were designed to protect the public interest in
punishing the violator and promoting respect for the laws. Therefore recognition by the public that
a sentence for drug crimes will be commensurate with the gravity of the offense should act as a
deterrent to would-be violators. Here, Mr. Anderson is a low-level drug trafficker with a minimal
criminal history and minimal time spent incarcerated. He would argue that a punishment at the
five-year mandatory minimum would still be a just punishment and would serve to promote respect
for the law to offenders who engage in similar conduct.

c. **18 U.S.C. §3553(a)(2)(B),(C): THE NEED FOR THE SENTENCE IMPOSED TO
AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT AND THE
NEED FOR THE SENTENCE IMPOSED TO PROTECT THE PUBLIC FROM
FURTHER CRIMES OF THE DEFENDANT**

For many of the same reasons already discussed, Mr. Anderson argues that a lengthy prison
term is not necessary to afford adequate deterrence to criminal conduct or protect the public from
further crimes of the defendant. In a 2016 report on recidivism published by the United States
Sentencing Commission, the summary of the report states, "with the exception of very short
sentences (less than 6 months), the rate of recidivism varies very little by length of prison sentence
imposed." U.S.S.C., "Recidivism Among Federal Offenders: A Comprehensive Overview,"
March 2016, Summary and Appendix A1 (last accessed on December 15, 2023 at
<https://www.ussc.gov/research/research-reports/recidivism-amongfederal-offenders-comprehe-
nsive-overview>). U.S.S.C research has also found that an offender's criminal history is closely
correlated with recidivism rates. Rearrest rates range from 30.2% for offenders with zero total
criminal history points to 80.1% of offenders in the highest Criminal History Category, VI. Id. The
study also found that as an offender's age increased, his chances for recidivism decreased. In

particular, defendants who were between the ages of fifty-one (51) and sixty (60) at the time of sentencing had a recidivism rate of 21.7% and those older than sixty (60) at the time of their release had a 16% recidivism rate. Ibid. As such, Mr. Anderson is likely to have a low chance for recidivism upon release, regardless of the length of the sentence imposed on him. As such, the public should feel confident that they will be protected from further crimes by Mr. Anderson during a shorter period of incarceration and his release that follows.

   **d.  18 U.S.C. §3553(a)(2)(D): THE NEED FOR THE SENTENCE IMPOSED TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER**

A lengthy prison term is not necessary to provide these types of resources to a defendant like Mr. Anderson. Mr. Anderson is on Social Security Disability payments for income, therefore educational and/or vocational training would not benefit him upon his release as he will still be medically unable to work. Mr. Anderson does wish to participate in a substance abuse treatment program while incarcerated. The Bureau of Prisons Residential Drug Abuse Program (RDAP) is a nine-month program that could suit this need. *See* https://www.bop.gov/inmates/custody_and_care/substance_abuse_treatment.jsp. Mr. Anderson would assert though that similar treatment could be completed while under supervised release, meaning there is no need for a longer period of incarceration.

Mr. Anderson does argue that he is in need of medical care, which he has not received up to this point. Mr. Anderson would request this Court make a recommendation for placement at a Care Level 3 medical care facility or higher, such as FMC Lexington or USP Terre Haute, so that his medical conditions can be better managed. His diagnosis of medically treated diabetes and diabetic neuropathy would qualify him as Care Level 3, according to the Federal Bureau of Prisons Clinical Practice Guidance, May 2019. However, Mr. Anderson would maintain that his conditions

are best managed by his long-time treating doctors, who are familiar with his conditions and ailments. As such, Mr. Anderson would assert that his serious medical conditions, and the cost they will impose on the BOP, support his request for a downward variance.

## CONCLUSION

Mr. Anderson has plead guilty and readily accepts the sentence this Court will give him; however, he urges this Court to find that his sentence range calculated pursuant to the Guidelines however is not sufficient, but in fact, is greater than necessary to adequately address his guilt. Taken together, the history and characteristics of the defendant, the nature and circumstances of the offense, and the sentencing factors described in Section 3553(a) all support a sentence below the Guideline range. The defense thus respectfully urges the Court to impose such a sentence that is sufficient, but not greater than necessary, to serve the interests of justice and the factors set forth in 18 U.S.C. 3553(a).

Respectfully submitted,

 /s/  Ashlea N. Hellmann
Ashlea N. Hellmann
FERNANDEZ & MOLONEY PLLC
401 West Main Street, Suite 1807
Louisville, Kentucky 40202
(502) 589-1001
ahellmann@fhmlegal.com
*Counsel for Defendant Anderson*

## **CERTIFICATION OF SERVICE**

This is to certify that a copy of the foregoing Motion was electronically filed with the Clerk of the Court by use of the CM/ECF system, sending notice to all counsel of record, on this the 26th day of December 2023.

_/s/ Ashlea N. Hellmann_____ _____
Ashlea N. Hellmann